*In re* KAREN SCHAAP, Alleged to be a Person in Need of Involuntary Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Karen Schaap, Respondent-Appellant).

Second District No. 2—94—1284

Opinion filed August 24, 1995.

498

Barbara J. Sosin, of Guardianship & Advocacy Commission, of Hines, and Laurel Whitehouse Spahn, of Guardianship & Advocacy Commission, of Chicago, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, Karen Schaap, appeals the order of the circuit court of Kane County finding her to be a person in need of involuntary psychotropic medication. She contends that the State failed to prove its case by clear and convincing evidence, that the court lacked subject matter jurisdiction, and that she was denied the effective assistance of counsel. We affirm.

Respondent, a recipient of mental health care at the Elgin Mental Health Center (EMHC), ceased taking her prescribed medication in July 1993. On October 3, 1994, Dr. Carole Rosanova, a psychiatrist at EMHC, petitioned the circuit court to find respondent to be a person in need of involuntary psychotropic medication, pursuant to section 2—107.1 of the Illinois Mental Health and Developmental Disabilities Code (the Code)(405 ILCS 5/2—107.1 (West 1992)). Following a bench trial on October 21, 1994, respondent was found to be a person in need of involuntary psychotropic medication.

At the hearing in this matter the court heard testimony from Dr. Rosanova and from respondent. The parties stipulated to Dr. Rosanova's credentials. She then testified that (1) she had interviewed respondent several times; (2) she had attended respondent's monthly staffings; (3) she had reviewed respondent's complete treatment history; and (4) this is the type of information upon which she would usually rely in formulating a diagnosis. She diagnosed respondent as having chronic paranoid schizophrenia, a mental illness.

Dr. Rosanova also testified that since respondent discontinued her medication: (1) she exhibited deterioration in her ability to function, showing suffering, threatening, or disruptive behavior; (2) respondent reverted to expressing persecutory feelings about other people and became progressively agitated; (3) respondent's speech became pressured and she spoke of bizarre past events and caused other mental health care recipients to do bizarre things, such as drink urine; and (4) respondent began focusing obsessively on other people. Dr. Rosanova observed that respondent's disability existed for a period of time marked by the continuing presence of this deterioration and that these aspects of deterioration related to the termination of respondent's medication.

Dr. Rosanova testified about respondent's medication. The benefits of respondent's prior medication included (1) stabilization of mood; (2) a decrease in aggression; (3) a decrease in delusional, persecutory thinking and obsessing; (4) improved grooming; and (5) improved socialization. The main side effect of the prior medication was remittent "tardive dyskinesia" (a neurological disorder characterized by involuntary, uncontrollable muscle movements (*In re C.E.* (1994), 161 Ill. 2d 200, 214)). The new medication would cause fewer side effects. She concluded that the benefits of the new medication outweighed the harm caused by it.

Dr. Rosanova concluded that respondent lacks the capacity to make a reasoned decision about her medication, because she lacks insight into her mental illness and has exceedingly poor judgment. For example, her current preoccupation with food has led her to buy extra vegetables from other mental health care recipients and eat as many as 14 servings at once, so that the staff feared that she would choke. Dr. Rosanova also concluded that less restrictive treatment had been unsuccessful since respondent discontinued her medication. She saw a counselor twice weekly, but without medication she was not amenable to psychotherapy. Finally, Dr. Rosanova testified that she is licensed to administer psychotropic medication in Illinois and that she desired a court order authorizing involuntary administration of psychotropic medication for at least 90 days.

During cross-examination, Dr. Rosanova testified that respondent had not done well in support groups or in school since she ceased medication. She elaborated on the deterioration of respondent's appearance and explained that "focusing," a term she used during direct testimony, refers to an intentional preoccupation with another person; in respondent's case, another mental health care recipient whom respondent believes receives better care than she receives. Dr. Rosanova gave examples of people upon whom respondent had recently focused.

Respondent testified next. She indicated that she presently attends one support group, although she is scheduled for others. She attends a typing class but was dismissed from a horticulture class as a result of a problem with another student regarding nasal discharge. She asserted that the prior medication had caused these side effects: dry mouth, diarrhea, constipation, headaches, and vomiting. Since she ceased taking the medication, she still gets light-headed sometimes, but generally she feels better.

Respondent defended her behavior and personal appearance and attempted to explain events about which the doctor had testified. Respondent testified that she only got into fights when she was medicated and never got into fights once she ceased medication. However, she testified that she had always fought with another mental health care recipient, one who had resided in her cottage for about six months (respondent ceased medication more than a year prior to the hearing).

Respondent denied that she focused on specific individuals anymore, asserting that focusing had been a childhood problem. Much of her testimony, however, centered on two particular mental health care recipients. Respondent testified that Dr. Rosanova favored other mental health care recipients over her, increasing her medication and not increasing the medication of others. During cross-examination, respondent further explained her relationships with the mental health care recipients she spoke of during her direct testimony.

At the close of testimony, the parties waived argument. The trial court enumerated the statutory elements necessary to support an order of involuntary psychotropic medication and found that the State had met its burden of proof on each point. The court then entered a preprinted order authorizing involuntary administration of psychotropic medication (including necessary lab work and medical examinations) to respondent by such staff of the Illinois Department of Mental Health and Developmental Disabilities as have licenses to do so. Respondent appeals.

■ On appeal, the State has moved to strike portions of respondent's brief which rely upon medical texts as secondary authority. We ordered the motion to be taken with the case. A court of review must determine the issues before it based upon the evidence presented to the trial court. (*People v. Reimolds* (1982), 92 Ill. 2d 101, 106-07.) However, a reviewing court is entitled to rely on secondary authority where there is no controlling primary authority. (See *SK Handtool Corp. v. Dresser Industries, Inc.* (1993), 246 Ill. App. 3d 979, 986.) Furthermore, the three works cited by respondent, Physician's Desk Reference (48th ed. 1994), Schatzberg & Cole, Manual of Clinical Pharmacology (1986), and Diagnostic & Statistical Manual (4th ed. 1994), are trustworthy scholarly authorities that may properly be considered in interpreting evidence. (See *People v. Wilhoite* (1991), 228 Ill. App. 3d 12, 23; *Alton v. Kitt* (1982), 103 Ill. App. 3d 387, 398.) We therefore deny the State's motion to strike.

Psychotropic and antipsychotic drugs are medications commonly used in treating mental disorders. (*Washington v. Harper* (1990), 494 U.S. 210, 214, 108 L. Ed. 2d 178, 193, 110 S. Ct. 1028, 1032.) Such drugs alter the chemical balance of the brain, with the desired result being that the medication will aid the patient in organizing thought processes and regaining a rational state of mind. (*Washington*, 494 U.S. at 214, 108 L. Ed. 2d at 193, 110 S. Ct. at 1032.) These drugs can also have serious side effects. *Washington*, 494 U.S. at 230, 108 L. Ed. 2d at 203, 110 S. Ct. at 1041.

■ Section 2—107.1 of the Code permits a court to authorize the involuntary administration of psychotropic medication to a mental health care recipient if the following elements of proof are met:

"(1) That the recipient has a serious mental illness or developmental disability.

(2) That because of said mental illness or developmental disability, the recipient exhibits deterioration of his ability to function, suffering, or threatening or disruptive behavior.

(3) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in paragraph (2) of subsection (d) of this Section or the repeated episodic occurrence of these symptoms.

(4) That the benefits of the psychotropic medication will outweigh the harm.

(5) That the recipient lacks the capacity to make a reasoned decision about the medication.

(6) That other less restrictive services have been explored and found inappropriate." (405 ILCS 5/2—107.1(d) (West 1992).)

These elements must be proved by clear and convincing evidence, and an order issued pursuant to this section of the Code cannot

extend more than 90 days and must designate the persons authorized to administer the psychotropic medication. 405 ILCS 5/2—107.1(d), (e), (f) (West 1992).

Respondent first contends that because the State failed to present clear and convincing evidence as to each element necessary to support the order, the trial court erred in finding her to be a person in need of involuntary administration of psychotropic medication. She argues that the State failed to present the bases for Dr. Rosanova's opinions on each point. A reviewing court will give great deference to the trial court's findings in such a case, and those findings will be reversed only if the trial court's decision is manifestly erroneous. *In re Brazelton* (1993), 245 Ill. App. 3d 1028, 1033.

■ For medical testimony to be clear and convincing, "it is sufficient if the expert indicates the basis of [her] diagnosis by having directly observed the respondent on several occasions." (*In re Tuman* (1994), 268 Ill. App. 3d 106, 111.) An expert may rely on unsubstantiated evidence that is ordinarily considered hearsay for the purpose of explaining the basis of an opinion, so long as that evidence is the type reasonably relied upon by experts in the field. (*Tuman*, 268 Ill. App. 3d at 111.) We have reviewed the record carefully and find that Dr. Rosanova's opinions were adequately supported and that her testimony was clear and convincing. Therefore, the trial court's finding in favor of the State was not manifestly erroneous.

■ Respondent next contends that the trial court's decision was manifestly erroneous because, having demonstrated respondent's lack of capacity to make a reasoned decision regarding medication, the State failed to employ "substituted judgment." In *In re Estate of Longeway* (1989), 133 Ill. 2d 33, the Illinois Supreme Court adopted the substituted judgment standard in the context of refusing life-sustaining treatment on behalf of an incompetent person. (*Longeway*, 133 Ill. 2d at 49-51.) Substituted judgment looks to what decision the incompetent person would have made had she been competent. *Longeway*, 133 Ill. 2d at 49.

Our supreme court has held that the wishes of a mental health recipient when she is competent will often be highly pertinent and very relevant to a determination of whether psychotropic medication should be administered. (*C.E.*, 161 Ill. 2d at 220-23.) "When those wishes have not been clearly proven, however, the court should be guided by an objective standard of reasonableness, as shown by the evidence presented." *C.E.*, 161 Ill. 2d at 221.

In the present case, there was no evidence concerning respondent's wishes regarding psychotropic medication when competent. Therefore, the decision was to be guided by an objective standard of

reasonableness. After careful consideration of the record, we determine that the decision was guided by an objective standard of reasonableness and therefore was not erroneous.

■ Next, respondent contends that the trial court lacked subject matter jurisdiction over this case because its order exceeded the authority granted under section 2—107.1. (405 ILCS 5/2—107.1(d) (West 1992).) The rendering of an erroneous decision does not divest a court of subject matter jurisdiction. If a court has jurisdiction, it is empowered to make a decision, correct or not. *People v. Davis* (1993), 156 Ill. 2d 149, 156.

Furthermore, respondent's assertion that the order exceeded the authority granted under section 2—107.1(d) (405 ILCS 5/2—107.1(d) (West 1992)) is incorrect. The court did not "implicitly require" the administration of the medication. The court merely authorized the administration of the medication, as it is empowered by statute to do. Also, implicit in the authority to administer such medication is the authority and responsibility to do so safely and correctly. Proper administration of medication requires lab work and medical examination. For these reasons, the order did not exceed the authority granted under section 2—107.1(d). 405 ILCS 5/2—107.1(d) (West 1992).

■ Finally, respondent contends that she was denied the effective assistance of counsel, in that her attorney failed to present a defense and failed to subject the State's case to meaningful adversarial testing. The parties dispute whether the constitutional right to counsel applies here. We need not reach that issue, however, for after careful consideration of the record, we find that respondent's counsel did in fact present evidence and did subject the State's case to meaningful adversarial testing. Therefore, regardless of whether she was entitled to the effective assistance of counsel, respondent was in fact effectively assisted by counsel.

For all these reasons, the order of the circuit court of Kane County finding respondent to be a person in need of involuntary psychotropic medication is affirmed.

Affirmed.

INGLIS and DOYLE, JJ., concur.