Filed 9/28/10          NO. 4-09-0862

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: LAURA H., a Person Found | ) | Appeal from |
| Subject to the Administration of | ) | Circuit Court of |
| Psychotropic Medication, | ) | Sangamon County |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | No. 09MH832 |
|      Petitioner-Appellee, | ) | |
|      v. | ) | Honorable |
| LAURA H., | ) | Steven H. Nardulli, |
|      Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

On November 2, 2009, Dr. Ghassan Bitar filed a petition for the involuntary administration of psychotropic medications to respondent, Laura H. After a November 13, 2009, hearing, the trial court granted the petition.

Respondent appeals, contending the State failed to prove the following statutory elements necessary for the involuntary administration of psychotropic medication: (1) respondent lacked capacity to make a reasoned decision (405 ILCS 5/2-107.1(a-5)(4)(E) (West 2008)) as she did not receive the required information about the benefits of the proposed treatment and its alternatives and (2) all of the proposed medications' benefits outweighed their harm (405 ILCS 5/2-107.1(a-5)(4)(D) (West 2008)) because no evidence was presented regarding the side effects of the nonpsychotropic medications. We reverse.

I. BACKGROUND

Dr. Bitar's petition alleged respondent had a mental illness and lacked the capacity to give informed consent to the

administration of psychotropic medication, which respondent needed because she was very paranoid. The petition listed a first choice medication of olanzapine, and the following list of alternatives: aripiprazole, quetiapine, risperidone, risperidone consta, ziprasidone (both by mouth and injection), haloperidol, haloperidol decanoate, lorazepam, diphenhydramine, and benztropine. In the common-law record, the petition is preceded by 33 pages of information regarding the aforementioned medications.

On November 13, 2009, the trial court held a hearing on the petition. The testimony relevant to the issues on appeal is set forth below.

Dr. Bitar testified respondent was court admitted by the Champaign County circuit court on October 27, 2009. It was respondent's first admission to McFarland Mental Health Center. Dr. Bitar was currently treating respondent, who suffered from schizophrenia. Respondent did not believe she had a mental illness and refused medication. Dr. Bitar had no prior experience with respondent and did not know what medications respondent had taken in the past.

Dr. Bitar explained that all of the medications on the proposed medication list, except for lorazepam, diphenhydramine, and benztropine, were in the same class, i.e., antipsychotic medications. The benefits a patient might realize from antipsychotic medications included general help with the paranoid ideas, delusions, and hallucinations. When asked about the side

effects of such drugs, Dr. Bitar stated the following:  "The symptom might become uncontrolled.  The delusion might become--or resolve; the hallucination would also resolve."  As for lorazepam, Dr. Bitar testified it was an antianxiety drug that he might use to help with sleep or agitation.  Lorazepam could cause sedation and had a potential for addiction.  Dr. Bitar stated the following about the two other drugs:

> "Diphenhydramine and [b]enztropine used
> to help with EPS [(extrapyramidal symptoms),]
> which is a side effect of anti[]psychotic.
> People develop muscle spasm, tremor, [and]
> Parkinson sometimes.  So most medication help
> alleviate side effect.  Diphenhydramine is a
> little bit sedating so we use it to help with
> sleep or in case of agitation."

In Dr. Bitar's opinion, the benefits of the medication outweighed the risks.  He believed the medication would improve respondent's symptoms.  Respondent's symptoms would likely not improve without the treatment and her condition would continue to deteriorate without treatment.

Moreover, Dr. Bitar testified he had once tried to talk with respondent about the side effects of the proposed medications, and she got angry.  Respondent felt Dr. Bitar could not and should not give her medication.  She then left the room. Respondent had also refused to talk to Dr. Bitar a few other times.  Dr. Bitar testified respondent did receive a written list

of the side effects.  In Dr. Bitar's opinion, medication was the least-restrictive treatment alternative.

Respondent testified on her own behalf.  She stated Dr. Bitar had approached her about medications one time.  During the meeting, he handed her a bunch of papers and fell asleep. Respondent stated the bunch was around 20 pages and noted the involuntary-administration petition looked familiar.

On rebuttal, Dr. Bitar denied ever falling asleep in a meeting with a patient.

At the conclusion of the hearing, the trial court granted the petition and allowed the administration of the medications for 90 days.

That same day, respondent filed a notice of appeal in substantial compliance with Supreme Court Rule 303 (Official Reports Advance Sheet No. 15 (July 16, 2008), R. 303, eff. May 30, 2008), and thus this court has jurisdiction under Supreme Court Rule 301 (155 Ill. 2d R. 301).  See In re Steve E., 363 Ill. App. 3d 712, 717, 843 N.E.2d 441, 445 (2006) (proceedings under the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 through 6-107 (West 2004)) are civil matters).

## II. ANALYSIS

### A. Mootness

Respondent recognizes her case is moot as the order's 90-day period has expired.  Generally, Illinois courts do not (1) address moot questions, (2) render advisory opinions, or (3) consider issues for which the court's decision will not affect

the result no matter what the court decides. In re Alfred H.H., 233 Ill. 2d 345, 351, 910 N.E.2d 74, 78 (2009). However, our supreme court has recognized exceptions to the mootness doctrine, including the following: (1) the public-interest exception, (2) the capable-of-repetition-yet-avoiding-review exception, and (3) the collateral-consequences exception. See Alfred H.H., 233 Ill. 2d at 355-61, 910 N.E.2d at 80-83. Respondent contends her arguments fall under the public-interest and collateral-consequences exceptions.

Courts narrowly construe the public-interest exception, which has the following three criteria: "(1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." Alfred H.H., 233 Ill. 2d at 355, 910 N.E.2d at 80.

In her first argument, respondent raises the issue of compliance with section 2-102(a-5) of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/2-102(a-5) (West 2008)). The important liberty interests involved in involuntary-treatment cases requires strict compliance with statutory procedures. In re A.W., 381 Ill. App. 3d 950, 955, 887 N.E.2d 831, 836 (2008). Moreover, our supreme court has recognized "the procedures courts must follow to authorize the involuntary medication of mental[-]health patients involve matters of 'substantial public concern.'" In re Robert

- 5 -

S., 213 Ill. 2d 30, 46, 820 N.E.2d 424, 434 (2004), quoting In re Mary Ann P., 202 Ill. 2d 393, 402, 781 N.E.2d 237, 243 (2002). This court has already addressed similar questions regarding compliance with section 2-102(a-5) (see A.W., 381 Ill. App. 3d at 956-57, 887 N.E.2d at 837; In re Louis S., 361 Ill. App. 3d 774, 780, 838 N.E.2d 226, 232 (2005)), and thus this issue's recurrence indicates both (1) a need still exists for guidance in this area and (2) the likeliness of future recurrence in other mental-health cases. Respondent's second argument shows a need for clarification of a prior holding, and thus it too presents a public matter that needs addressed and is likely to recur in future mental-health cases.

Accordingly, we find respondent has established the criteria necessary to satisfy the public-interest exception to the mootness doctrine, and thus we need not address the capable-of-repetition exception.

B. Receipt of Written Information

Section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2008)) provides, in pertinent part, the following:

> "If the services include the administration of electroconvulsive therapy or psychotropic medication, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as

alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated."

In Louis S., 361 Ill. App. 3d at 779-80, 838 N.E.2d at 231-32, this court held the State must present clear and convincing evidence at the hearing on the involuntary-treatment petition of compliance with the aforementioned statutory provision.  We further noted the following:

"(1) verbal notification is insufficient to ensure a respondent's due-process rights, (2) 'the right to written notification is not subject to a harmless-error analysis,' and (3) strict compliance with the procedural safeguards of the [Mental Health] Code is necessary to protect the liberty interests involved."  A.W., 381 Ill. App. 3d at 957, 887 N.E.2d at 837, quoting Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232-33.

Here, respondent frames her section 2-102(a-5) issue as both an insufficiency-of-the-evidence claim and a lack-of-statutory-compliance claim.  As to the sufficiency of the evidence, this court will not reverse the trial court's determination unless it was against the manifest weight of the evidence.  A.W., 381 Ill. App. 3d at 957, 887 N.E.2d at 838.  "A judgment will be considered against the manifest weight of the evidence

'only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.'" Louis S., 361 Ill. App. 3d at 779, 838 N.E.2d at 231, quoting In re John R., 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).  Whether substantial compliance with a statutory provision has taken place presents a question of law, which we review de novo.  Behl v. Gingerich, 396 Ill. App. 3d 1078, 1086, 920 N.E.2d 665, 671 (2009).

Dr. Bitar only testified respondent received a written list of the side effects.  Respondent only testified she received a stack of papers from Dr. Bitar.  No evidence at trial showed respondent received written notice of the risks and benefits of the treatment as well as alternatives to the proposed treatment.  This court has emphasized "not only does section 2-102(a-5) require written notification of the proposed treatment's side effects, it also requires written notification of risks, benefits, and alternatives to the proposed treatment."  In re Dorothy J.N., 373 Ill. App. 3d 332, 336, 869 N.E.2d 413, 416 (2007).  The State notes the stack of papers in the common-law record regarding the medications that were the subject of the involuntary-treatment petition.  However, those papers were not admitted into evidence at the involuntary-treatment hearing.  A reviewing court must determine sufficiency of the evidence at the hearing based upon the evidence presented to the trial court.  See In re Schaap, 274 Ill. App. 3d 497, 501, 654 N.E.2d 1084, 1086 (1995) (noting a reviewing court "must determine the issues before it

- 8 -

based upon the evidence presented to the trial court"). Since the State failed to present any evidence respondent was informed in writing of the risks and benefits of the proposed treatment, as well as alternatives to the proposed treatment, the trial court's involuntary-treatment order was against the manifest weight of the evidence. See A.W., 381 Ill. App. 3d at 957, 887 N.E.2d at 838.

Since the important public issue here is actual compliance with section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2008)), we next address that issue. As noted, the State indicates Dr. Bitar personally gave respondent the stack of documents in the common-law record regarding the medications stated in the involuntary-treatment petition, and asserts those papers complied with the requirements of section 2-102(a-5). We disagree the documents constitute compliance with section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2008)).

At the hearing, Dr. Bitar testified the general benefit of an antipsychotic medication is to help with the paranoid ideas, delusions, and hallucinations. He also testified the benefits of lorazepam, an antianxiety drug, is to help with sleep or agitation. The benefit of both diphenhydramine and benztropine is to address the extrapyramidal symptoms that are side effects of an antipsychotic drug. Other benefits of diphenhydramine are helping with sleep or agitation. However, the documents in the common-law record state the name of the

drug, what conditions it treats, how to take and store the drug, warnings, and side effects. For example, the olanzapine pages state it treats psychotic disorders, such as schizophrenia or bipolar disorder. The page does not state it helps address paranoid ideas, delusions, and hallucinations. The sheets for lorazepam state it treats anxiety, anxiety with depression, and insomnia (trouble sleeping). Agitation is not mentioned at all. For diphenhydramine, the sheets say it treats symptoms caused by hay fever, allergies, or the common cold and may be used as a nighttime sleep aid. Last, the benztropine documents state it treats Parkinson's disease or the side effects of other drugs. Nowhere in the document does it explain what side effects it addresses. Importantly, none of the aforementioned documents indicate how the specific drug will be used to benefit respondent's mental-health issues as they are either vague, e.g., benztropine, or treat multiple conditions, e.g., diphenhydramine.

"Before a patient can make a reasoned decision about medication, 'it is first necessary to be informed about the risks and benefits of the proposed course of medicine.'" Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232, quoting John R., 339 Ill. App. 3d at 783, 792 N.E.2d at 354. As in this case, it is common for the respondent to decline to talk with the physician about the proposed treatment. Thus, it is important for the written information to specifically address the benefits for the respondent.

Additionally, the documents are just a stack of drug

handouts.  The documents do not explain the treatment alterna-tives available to respondent.  Here, Dr. Bitar sought to admin-ister olanzapine used to address paranoid ideas, delusions, and hallucinations.  First, the olanzapine sheets do not state it is the first-choice medication, and the other medications documents do not indicate they are alternative medications.  Respondent had to reference the petition to determine what was the first choice and what were the alternatives.  Second, none of the other drugs proposed as alternatives stated they were for the same purpose as the olanzapine, and some indicate they were clearly for the treatment of other issues such as agitation and trouble sleeping.  A stack of papers that includes the first-choice medication and its proposed alternative medications without any explanation as to how they were alternatives to the medication sought to be administered does not adequately explain alternative treatments as required by section 2-102(a-5).  Moreover, we note that, if nonmedication treatment alternatives were appropriate for respon-dent, the written information should also have included them since "treatment" includes more than medication (see 405 ILCS 5/1-128 (West 2008) (defining "treatment")).

Accordingly, we find the written documents provided to respondent did not state the benefits and treatment alternatives as required by section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2008)).  While it was likely clear respondent needed the administration of psychotropic medication, it still remains imperative to conduct the proceedings and the

- 11 -

administration of such medication pursuant to the requirements of the Mental Health Code (405 ILCS 5/1-100 through 5/6-107 (West 2008)). See Louis S., 361 Ill. App. 3d at 783, 838 N.E.2d at 234.

### C. Nonpsychotropic Medications

Respondent also alleges the State failed to present evidence of the side effects of diphenhydramine and benztropine, which are both nonpsychotropic medications. The State does not deny respondent's allegation but asserts it did not have to produce such evidence at the hearing since the medications are nonpsychotropic. Whether the State has to present evidence as to the side effects of nonpsychotropic medication is a question of law, and thus our review is de novo. See Behl, 396 Ill. App. 3d at 1086, 920 N.E.2d at 671.

In A.W., 381 Ill. App. 3d at 959, 887 N.E.2d at 839, this court rejected the argument a trial court's order authorizing involuntary treatment failed to comply with the Mental Health Code (405 ILCS 5/2-107.1(a-5)(6) (West 2006)) because it authorized the administration of a nonpsychotropic medication. In doing so, we stated the psychiatrist has sole discretion in determining whether to list in the petition a nonpsychotropic medication used to counteract side effects of the psychotropic medication. A.W., 381 Ill. App. 3d at 960, 887 N.E.2d at 840. We further stated "[i]f the psychiatrist chooses to do so and testifies as to the nonpsychotropic medication--as happened here--nothing prohibits the trial court from including the

nonpsychotropic medication in its order." A.W., 381 Ill. App. 3d at 960, 887 N.E.2d at 840.

In finding it was proper for the trial court to include a nonpsychotropic medication in its involuntary-treatment order, we made a point of requiring the psychiatrist to testify about the nonpsychotropic medication. By including the medication in an involuntary-treatment order, the trial court has granted its approval of the psychiatrist's proposed use of the medication. Thus, the court should have information about the nonpsychotropic medication before granting its approval. Clearly, such information should include both the benefits and potential side effects of the medication.

Accordingly, diphenhydramine and benztropine should not have been included in the involuntary-treatment order for respondent because the State failed to present evidence of any potential side effects of those drugs.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

STEIGMANN and POPE, JJ., concur.

- 13 -