# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Vanessa K.*, 2011 IL App (3d) 100545

---

| | |
|---|---|
| Appellate Court Caption | *In re* VANESSA K., Alleged to be Subject to Involuntary Medication (Vanessa K., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-10-0545 |
| Filed | August 17, 2011 |
| Rehearing denied | September 26, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order for the involuntary administration of psychotropic medications to respondent was upheld on appeal over her contention that the State failed to comply with the statutory requirements that she be given written information about the risks and benefits of the proposed treatments. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 10-MH-13; the Hon. Raymond J. Conklin, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Ann Krasuski, of Guardianship & Advocacy Commission, of Hines, Cynthia Z. Tracy, of Guardian & Advocacy Commission, of Peoria, and Veronique Baker, of Guardianship & Advocacy Commission, of Chicago, for appellant. |
| | Jeff Terronez, State's Attorney, of Rock Island (Terry A. Mertel and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. Presiding Justice Carter and Justice Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    The trial court granted the State's petition to involuntarily administer psychotropic medication to respondent Vanessa K. She appealed. We affirm.

¶ 2                                   FACTS

¶ 3    Respondent Vanessa K., who was 35 years old at the time the petition was filed, suffers from schizophrenia. She voluntarily resided in a facility for persons with mental illness before admitting herself, also voluntarily, to the Robert Young Mental Health Center for inpatient treatment. During her hospitalization at Robert Young, she would intermittently take her medication and other times would refuse to take it. Her treating doctor, Ernest Galbreath, filed a petition for involuntary treatment with psychotropic medication, seeking authority to administer the antipsychotic medication, Risperdal Consta, as a first choice, and offering 20 other medications as treatment alternatives, including Prolixin Decanoate, also an antipsychotic.

¶ 4    At a hearing on the petition to involuntarily medicate, Galbreath testified in support of the petition. Early in Galbreath's testimony, Vanessa's attorney interrupted and stated for the record that Vanessa, "during the [d]octor's testimony has been writing very rapidly on a number of pieces of paper and humming and making other noises and chewing her lips and talking to herself and not appearing to be engaged with the proceedings–." Vanessa then left the proceedings, stating:

"I am leaving. Go ahead, discuss it without me, I will leave this for Supreme Court Judge and half the world is watching, there is my written appeal, the Judge has the paper, thank you and I do want to leave because you all –."

The record includes the "written appeal" Vanessa gave the trial court before leaving the

proceeding, which consists of illegible and illogical writing.

¶ 5    Galbreath resumed his testimony and stated that he was a psychiatrist and medical director at Robert Young. He had been Vanessa's treating psychiatrist for over three years and diagnosed her with schizophrenia paranoia, a serious mental illness. The disorder causes a patient to experience auditory and visual hallucinations, and to be psychotic, paranoid, and fearful of what might be done to her. Vanessa had been brought to Robert Young after she attacked a staff member at her residential facility when she was not given a soda. Her treatment at Robert Young included counseling and group sessions, as well as individual sessions with Galbreath. Her treatment plan also included medication.

¶ 6    Galbreath saw Vanessa daily during her inpatient treatment. Due to her mental illness, Vanessa was exhibiting a deterioration in her ability to function. He described that Vanessa spent entire days pacing up and down the hallway where she would previously sit and participate in a therapy session. Her deteriorating behavior also included laughing out loud, talking to herself, not taking her medication, and becoming angry and belligerent toward her caretakers. She was also exhibiting or threatening disruptive behavior. Galbreath stated that Vanessa's behavior was continuing, and "getting worse each day." Because of her illness, the least restrictive treatment alternatives, to allow Vanessa to medicate herself or to voluntarily take her medication, had not been effective in the past and would not be viable options.

¶ 7    Galbreath discussed his treatment plan of prescribing Prolixin Decanoate, the antipsychotic medication with a generic name of fluphenazine decanoate. The drug is administered in an injectable dose of 2.5 and 50 milligrams every two weeks. No testing or procedures were required to monitor the medication, although he would observe Vanessa's progress on the drug. Galbreath pointed to the ability for Vanessa to go two weeks between doses as a reason he prescribed the drug. He also pointed to Vanessa's refusal to take medication on her own, noting that when medicating herself, Vanessa "refuses at random, [is] very paranoid, that's part of her illness." He had administered Prolixin Decanoate to Vanessa previously and found it to be an effective treatment for her. Her prior use of the drug resulted in continued auditory and visual hallucinations, but curbed her physical aggression. When taking the drug previously, Vanessa remained free of hospitalization for her illness for over a year. He rejected less restrictive treatment or medication because of Vanessa's unpredictability and unreliability about maintaining her medication. He stated that Vanessa "will not address the psychotic activity." In his opinion, she lacked the capacity to make a reasoned decision regarding the administration of medication. He believed the drug was necessary as a safety measure to manage Vanessa so she would not attack people, which first occurred after she stopped taking her medication. He also observed that, when not on her medication, Vanessa was "not really rational to take care of herself."

¶ 8    Galbreath acknowledged that when he submitted the petition, his first preference for medication was Risperdal Consta, a newer antipsychotic drug than Prolixin Decanoate, which had not been available in an injectable form when Vanessa previously took the drug. He explained that he substituted the medication because at the time he filed the petition, he did not know that Vanessa had taken previously taken Prolixin. He testified regarding the side effects of Risperdal Consta and compared them to the side effects of Prolixin

Decanoate. Galbreath stated that he had advised Vanessa orally about the risks, benefits, and side effects of medication, including Risperdal Consta and Prolixin Decanoate, on a daily basis during her hospitalization at Robert Young, although she would often become disruptive and leave during the explanation. On her arrival at Robert Young, Vanessa was provided a standard form, written explanation concerning the side effects of different medications generally given to his patients. Galbreath acknowledged that he never gave Vanessa written information specifically concerning Prolixin Decanoate.

¶ 9 The trial court questioned Galbreath, ensuring that the doctor wanted the trial court to grant him authority to give Vanessa Prolixin Decanoate, 2.5 to 50 milligrams intravenously, every two weeks, rather than Risperdal Consta, as stated in the petition. As a result of discussion with Vanessa's attorney, the trial court narrowed the petition to substitute Prolixin Decanoate as the primary medication, over Vanessa's objection. The State also objected, noting that the statutory written notice requirements were to be strictly construed and that Vanessa was not given written information about Prolixin Decanoate. According to the State, because Vanessa was provided written information regarding Risperdal Consta, it should remain the primary medication per the petition in order to comply with the statutory requirements. The trial court admonished the parties to decide whether to amend the petition and adjourned for 10 minutes. When the hearing reconvened, Galbreath testified that he gave Vanessa an oral explanation and written information on Prolixin Decanoate. The written information states that the drug treats schizophrenia and includes the following headings: "When This Medicine Should Not Be Used," "How to Use This Medicine," Drugs and Foods to Avoid," "Warnings While Using This Medicine," and "Possible Side Effects." A copy of the written information provided Vanessa was admitted into evidence.

¶ 10 Following the close of testimony, the trial court granted the petition in its entirety. It made the following findings. Vanessa had a serious mental illness, suffered from a deterioration of her ability to function, and had engaged in threatening behavior. The benefits of involuntarily administration of Prolixin Decanoate outweighed its harm. Vanessa was informed orally and in writing about the drug's side effects. Vanessa lacked the capacity to make a reasoned decision about taking medication. Less restrictive alternatives were explored and determined to be inappropriate. The trial court noted Vanessa's in-court behavior as support that a least restrictive environment would not work. No testing was required for the safe administration of the drug. Afer making its findings, the trial court gave a copy of Vanessa's appeal rights to her attorney and told him to give it to her, which counsel agreed to do.

¶ 11                                                    ANALYSIS

¶ 12 Vanessa raises three issues: whether the State failed to comply with section 2-102 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-102(a-5) (West 2010)); whether the order allowing the involuntary administration of medication was supported by clear and convincing evidence (405 ILCS 5/2-107.1(a-5) (West 2010)); and whether the issues raised on appeal are moot.

¶ 13 We begin with the mootness issue, as it affects the viability of the appeal. Vanessa argues that this court should recognize her appeal under the recognized exceptions to the mootness

doctrine. She contends all three of the exceptions apply. Whether an exception to the mootness doctrine applies is a question of law, which we review *de novo*. *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009).

¶ 14    Courts will generally not decide moot questions, render advisory opinions, or consider issues where the results will not be affected regardless of how the court decides the issues. *Alfred H.H.*, 233 Ill. 2d at 351. There are three exceptions to the mootness doctrine. *In re Daryll C.*, 401 Ill. App. 3d 748, 752 (2010). The public interest exception applies where (1) the question is one of a public nature; (2) there is a need for an authoritative determination for future guidance of public officers; and (3) there is a likelihood that the question would recur. *In re Robin C.*, 395 Ill. App. 3d 958, 963 (2009). The "capable of repetition yet evading review" exception requires the complaining party to show that (1) the challenged action is too short in its duration to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). The collateral consequences exception applies where a party has suffered or is threatened with an actual injury traceable to the defendant and likely to be redressed by a favorable judicial determination. *Daryll C.*, 401 Ill. App. 3d at 752.

¶ 15    Because the July 14, 2010, order authorizing the administration of psychotropic medication was limited by statute to 90 days, it had expired by the time of this appeal, making the issues raised here moot. 405 ILCS 5/2-107.1(a-5) (West 2010). However, we find that the public interest exception to the mootness doctrine applies and permits this court to reach the merits of Vanessa's first issue. Vanessa seeks an interpretation of the written notification requirements of section 2-102 of the Code, a matter of public concern. A determination of that issue by this court will guide other public officers seeking and deciding petitions to involuntarily medicate a respondent. There is a substantial likelihood that this issue will arise again because petitions are limited to 90-day periods for involuntary administration.

¶ 16    The public interest exception does not apply to Vanessa's second issue, where she raises a sufficiency of the evidence argument, because the facts of this case are particular to it and not matters of public concern. We determine that the second exception to the mootness doctrine, capable of repetition yet evading review, applies to the second appeal issue. The 90-day statutory limit for the involuntary administration establishes that an action challenging the grant of a petition cannot be fully litigated before it expires. As supported by the testimony below, Vanessa's history of noncompliance with maintaining her medication, and her inability to reason rationally because of her illness, it is reasonable to expect that she would be subject to another petition for involuntary administration of psychotropic medication in the future. Because these exceptions apply, we need not address the collateral consequences exception.

¶ 17    Having concluded that exceptions to the mootness doctrine apply, we address the substantive issues. We first consider whether the State failed to comply with section 2-102 of the Code. 405 ILCS 5/2-102(a-5) (West 2010). Vanessa contends that the State failed to establish that it provided the required written information to her about the medications that were options for her treatment. She also complains that the State failed to comply with the

three-day notice requirement as set forth in section 2-107.1(a-5)(1) of the Code. 405 ILCS 5/2-107.1(a-5)(1) (West 2010).

¶ 18    The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *In re Mary Ann P.*, 202 Ill. 2d 393, 405 (2002). The best indicator of the intent of the legislature is the statute's language, which should be given its plain and ordinary meaning. *Mary Ann P.*, 202 Ill. 2d at 405. We review issues of statutory construction *de novo*. *In re Michelle J.*, 209 Ill. 2d 428, 434 (2004).

¶ 19    Section 2-102(a-5) states:

"If the services include the administration of *** psychotropic medication, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated. The physician shall determine and state in writing whether the recipient has the capacity to make a reasoned decision about the treatment. *** If the recipient lacks the capacity to make a reasoned decision about the treatment, the treatment may be administered only (i) pursuant to the provisions of Section 2-107 or 2-107.1 [405 ILCS 5/2-107 or 405 ILCS 5/2-107.1] ***." 405 ILCS 5/2-102(a-5) (West 2010).

¶ 20    Section 2-102(a-5) requires written notification of the proposed treatment's side effects, risks, benefits, and alternative treatments. *In re Dorothy J.N.*, 373 Ill. App. 3d 332, 336 (2007). A person cannot make an informed decision regarding the administration of medication unless the risks and benefits are explained to him or her. *In re Cathy M.*, 326 Ill. App. 3d 335, 341 (2001). Even when a respondent is verbally advised about the benefits and risks of a medication, and refuses to take it, he or she is entitled to written information. *In re Richard C.*, 329 Ill. App. 3d 1090, 1095 (2002). The State must present clear and convincing evidence that it complied with the notification requirements in section 2-102(a-5). *In re Louis S.*, 361 Ill. App. 3d 774, 779-80 (2005).

¶ 21    Vanessa argues that trial court's order must be reversed because she was not provided written information about all the medication approved for administration by the court, noting the lengthy list of alternative medications attached to the order. She relies on *In re John R.*, 339 Ill. App. 3d 778 (2003), and *In re Laura H.*, 404 Ill. App. 3d 286 (2010), which interpreted the statute as necessitating that written information be provided on all the alternative medications. Both cases are distinguished on the facts. In *John R.*, two of the respondents did not receive any written information on the medications to be involuntarily administered and the third respondent only received information on one of the drugs authorized in the trial court's order. *John R.*, 339 Ill. App. 3d at 784. In *Laura H.*, the respondent was given a stack of drug handouts that failed to notify her about the risks, benefits, and alternatives to the proposed treatment. *Laura H.*, 404 Ill. App. 3d at 290.

¶ 22    The involuntary administration of psychotropic medication implicates a respondent's liberty interests, which include a right to refuse medication. In *In re C.E.*, 161 Ill. 2d 200, 214 (1994), the court recognized a mentally ill person's constitutionally protected liberty interest to refuse the administration of psychotropic medication. The court discussed two guiding fundamental concerns about an involuntary treatment recipient's due process rights, including the "substantially invasive nature of psychotropic substances and their significant

-6-

side effects" and "recognition that psychotropic substances may be misused by medical personnel" for patient control rather than treatment. *C.E.*, 161 Ill. 2d at 214-15. Because it implicates a respondent's liberty interests, the statute must be strictly construed. *In re Alaka W.*, 379 Ill. App. 3d 251, 275 (2008).

¶ 23 Here, the petition originally requested the administration of Risperdal Consta. Galbreath gave Vanessa written information on that drug and attempted to verbally explain its risks, benefits and side effects. He also verbally informed her of the risks, benefits, and side effects of Prolixin Decanoate. Although he spoke to Vanessa on a daily basis regarding medication, she would not participate in the discussion. In his opinion, Vanessa was "not really rational to take care of herself," and due to her illness, had a limited ability to understand the information regarding the medication. After the petition was filed, Galbreath determined that Prolixin Decanoate, an older form of schizophrenia medication, had worked well for Vanessa in the past and would be a better medication for her. The order entered by the trial court was limited to the administration of Prolixin Decanoate. The trial court expressly asked Galbreath what medication he wanted to administer to Vanessa. Galbreath explained why Prolixin Decanoate was a better choice for Vanessa, based on her prior experience using the medication. No other medications were discussed and the order specified only Prolixin Decanoate. *In re Gail F.*, 365 Ill. App. 3d 439, 447 (2006) (finding trial court can approve fewer medications than listed in the petition pursuant to treating doctor's request). Galbreath did not specify any alternative medications as he did not consider them to be viable options for Vanessa. Accordingly, there was no need to provide information on all the medications listed as alternatives in the attachment to the trial court's order. At the hearing, Galbreath admitted that written information on Prolixin Decanoate was not provided to Vanessa. The hearing recessed for Galbreath to give Vanessa written information on the drug. When the hearing reconvened, Galbreath testified that he provided Vanessa a document describing Prolixin Decanoate and its use, benefits, risks and side effects as required by the statute.

¶ 24 Vanessa also argues that the statute requires the written information be provided to a respondent three days prior to the hearing on a petition for involuntary administration. She points to section 2-107.1(a-5)(1), which requires that a respondent be delivered a copy of the petition three days before the hearing and contends that section 2-102 must be read in conjunction with that requirement. 405 ILCS 5/2-107.1(a-5)(1), 2-102(a-5) (West 2010). We find nothing in the Code requiring a three-day notice for the dissemination of written materials. While section 2-102 references section 2-107.1, it does not incorporate that section's three-day notice requirement. We agree with Vanessa that a respondent may not be able to make an informed decision without written information on the proposed treatment, and that the better practice is to provide the information prior to the hearing. However, we will not read into the statute conditions not expressed by the legislature. *Michelle J.*, 209 Ill. 2d at 437. We find that Vanessa was timely provided the necessary written information on Prolixin Decanoate as required in section 2-102 of the Code. In addition, the statutory requirements pertain to the extent the respondent is able to understand. Here, Galbreath's testimony and Vanessa's conduct at the hearing demonstrate her limited ability to understand.

¶ 25 Our final issue is whether the order allowing the involuntary administration of

medication was supported by clear and convincing evidence. Vanessa claims that the State failed to establish that she lacked capacity, that the benefits of medications outweighed their harm, and that the testing and procedures included in the order were necessary.

¶ 26    Section 2-107.1 allows a party to petition the court for an order authorizing the involuntary administration of psychotropic medication. 405 ILCS 5/2-107.1(a-5)(1) (West 2010). The petition and notice of the hearing on it must be delivered to the respondent, his or her attorney and guardian no later than three days before the hearing date. 405 ILCS 5/2-107.1(a-5)(1) (West 2010). The petition may also ask the court to authorize any testing and procedures necessary for the safe and effective administration of the medication and must set forth the specific testing and procedures. 405 ILCS 5/2-107.1(a-5)(1) (West 2010). Sections 2-107.1(a-5)(4)(A) through (a-5)(4)(G) state:

"(4) Psychotropic medication *** may be administered to the recipient if and only if it has been determined by clear and convincing evidence that all of the following factors are present. In determining whether a person meets the criteria specified in the following paragraphs (A) through (G), the court may consider evidence of the person's history of serious violence, repeated past pattern of specific behavior, actions related to the person's illness, or past outcomes of various treatment options.

(A) That the recipient has a serious mental illness ***.

(B) That because of said mental illness ***, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness *** for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness *** has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4)(A) through (a-5)(4)(G) (West 2010).

¶ 27    The State must present expert testimony regarding the above factors to sustain its burden. *In re Joseph M.*, 398 Ill. App. 3d 1086, 1090 (2010). Expert medical testimony is considered clear and convincing when the expert identifies direct observation of the respondent on several occasions as the basis for his or her diagnosis. *In re Schaap*, 274 Ill. App. 3d 497, 502 (1995) (citing *In re Tuman*, 268 Ill. App. 3d 106, 111 (1994)). An expert may also rely on unsubstantiated evidence ordinarily considered as hearsay in order to explain the basis of her opinion, if the evidence is the type reasonably relied on by experts in the field. *Schaap*, 274 Ill. App. 3d at 502.

-8-

¶ 28	An order authorizing administration of medication is limited to no more than 90 days. 405 ILCS 5/2-107.1(a-5)(5) (West 2010). The order must designate the persons authorized to administer the treatment and specify the medications and anticipated range of dosages, and "may include a list of any alternative medications and range of dosages deemed necessary." 405 ILCS 5/2-107.1(a-5)(6) (West 2010). This court will not reverse a trial court's order permitting the involuntary administration of psychotropic medication unless it is against the manifest weight of the evidence. *Joseph M.*, 398 Ill. App. 3d at 1089. An order is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary and not based on the evidence. *Joseph M.*, 398 Ill. App. 3d at 1089.

¶ 29	Vanessa contends that the State did not prove she lacked capacity, that the treatment's benefits outweighed its harm, and that testing and procedures were necessary. She does not dispute that the State established she has a serious mental illness; that because of her illness she exhibits a deterioration of her ability to function as compared to her ability before the current onset of symptoms, suffering, and threatening behavior; and that her illness has existed for a period showing continued symptoms. 405 ILCS 5/2-107.1(a-5)(4)(A), (a-5)(4)(B), (a-5)(4)(C) (West 2010).

¶ 30	To determine whether "the recipient lacks the capacity to make a reasoned decision about the treatment" (405 ILCS 5/2-107.1(a-5)(4)(E) (West 2010)), a trial court considers the following factors:

> "(1) The person's knowledge that he has a choice to make;
>
> (2) The person's ability to understand the available options, their advantages and disadvantages;
>
> (3) Whether the commitment is voluntary or involuntary;
>
> (4) Whether the person has previously received the type of medication or treatment at issue;
>
> (5) If the person has received similar treatment in the past, whether he can describe what happened as a result and how the effects were beneficial or harmful; and
>
> (6) The absence of any interfering pathologic perceptions or beliefs or interfering emotional states which might prevent an understanding of legitimate risks and benefits." *In re Israel*, 278 Ill. App. 3d 24, 37 (1996).

¶ 31	The record establishes the first factor, knowledge that she has a choice, weighs against involuntary administration. Galbreath testified that Vanessa would take her medication when she wanted to take it and would refuse it other times. Her refusal to take her medication prompted the filing of the petition to involuntarily medicate. Although Vanessa's reasoning in making a choice regarding her medication is suspect due to her mental illness, it appears that she was aware that she had a choice regarding medication. The second factor, ability to understand the available options, favors involuntary administration. Galbreath testified that he verbally informed Vanessa about the medication options on a daily basis but as a result of her illness, she would become disruptive and leave the room. He also characterized Vanessa as "not really rational to take care of herself" when she was not properly medicated, as demonstrated by her courtroom behavior.

¶ 32	The third factor, that the commitment is voluntary, favors Vanessa. However, this factor is tempered by Galbreath's testimony that Vanessa was "getting worse every day" due to her refusal to consistently take her medication. The fourth factor, Vanessa's previous use of Prolixin Decanoate, favors involuntary administration. Galbreath explained that Vanessa has reacted favorably to the drug in the past, that it curbed her aggression and that it allowed her to avoid hospitalization for over a year. The fifth factor, Vanessa's testimony regarding prior use of the medication, also favors involuntary administration. As reflected in the record, Vanessa was disruptive during the hearing and left without testifying. She presented the trial court with a purported "written appeal" that consisted of illogical writings. The final factor, the absence of any interfering pathologic perceptions, beliefs, or emotional states preventing an understanding of risks and benefits, also favors involuntary administration. Galbreath explained that because of her illness, Vanessa refused to consistently take her medication and to address her psychotic activity. Based on our application of the *Israel* factors to the instant facts, we find that the State established that Vanessa lacked the ability to make a reasoned decision regarding her medication.

¶ 33	We next consider whether the State established that the benefits of administering Prolixin Decanoate outweighed its harm. Galbreath compared the side effects of Risperdal Consta to those of Prolixin Decanoate. He noted that Vanessa previously used Prolixin Decanoate with successful results and apparently without adverse reaction. Without the medication, Vanessa was not rational to care for herself as evidenced by her worsening condition. He also believed that the involuntary administration of psychotropic medication was necessary for safety concerns, as supported by Vanessa's aggressive and threatening behavior toward her caretakers. Another benefit Galbreath mentioned was Vanessa's ability to stay out of the hospital for a year when previously using Prolixin Decanoate. Finally, contrary to Vanessa's claim, Galbreath testified, and the trial court reiterated, that no testing or procedures were needed to monitor Vanessa's use of Prolixin Decanoate. Galbreath said that he would monitor Vanessa with observation and that no other action was necessary. We find that the State proved by clear and convincing evidence the statutory factors necessary to sustain its petition. The trial court's grant of the petition to involuntarily administer psychotropic medication was not against the manifest weight of the evidence.

¶ 34	For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

¶ 35	Affirmed.