NOTICE

Decision filed 01/19/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210039-U

NO. 5-21-0039

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| GEORGE W. LITTLE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 15-MR-79 |
| | ) | |
| MICHAEL W. WEHRLE, not individually | ) | |
| but as Trustee of the Michael W. Wehrle | ) | |
| Revocable Trust created by Trust Agreement | ) | |
| dated January 22, 1991; and JO ELLEN | ) | |
| WEHRLE, not individually but as Trustee of | ) | |
| the Jo Ellen Wehrle Revocable Trust created | ) | |
| by Trust Agreement dated January 22, 1991, | ) | Honorable |
| | ) | Kevin S. Parker, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The order of the circuit court entering judgment in favor of the plaintiff is hereby reversed where the trial court's finding that the plaintiff had proved the elements of adverse possession by clear and convincing evidence was against the manifest weight of the evidence. Specifically, the plaintiff failed to prove the element of possession.

¶ 2    The defendants appeal from the judgment of the circuit court of Fayette County in favor of the plaintiff's claim of adverse possession. Following a court trial, the court found

1

that the plaintiff had proved the elements of adverse possession establishing the western boundary of the plaintiff's property to be demarcated by power poles that separated the properties. For the reasons that follow, we reverse the court's judgment.

¶ 3                                I. BACKGROUND

¶ 4     The plaintiff, George W. Little, is the fee simple owner of the east half of the southeast quarter of section 12 in Bear Grove Township, Fayette County, Illinois. The defendants, Michael W. Wehrle and Jo Ellen Wehrle, in their capacities as trustees, are the fee simple owners of the west half of the southeast quarter of section 12. The properties have a common boundary line; a 2647-foot north-south border separates the defendants' property from the plaintiff's property. In 2013, the defendants purchased the property from the Deal family and, in 2014, conducted a survey of the property. Thereafter, a dispute arose as to the boundary line between the parties' properties.

¶ 5     The facts detailing what occurred prior to trial in this case were detailed in this court's order in *Little v. Wehrle*, 2019 IL App (5th) 180362-U. Therefore, our recitation of the facts will include only those facts necessary for this appeal.

¶ 6     On December 16, 2016, the plaintiff filed an amended complaint for declaration of title by adverse possession, seeking title to a parcel of land owned by the defendants. The parcel in question was located between the parties' north-south border and a line to the west of that border "established by a fence extending immediately adjacent to and along power poles," also running north-south from the south line of section 12 to the east-west centerline of section 12. The complaint alleged that the plaintiff and his predecessors in

2

title had been in actual, continuous, open, notorious, exclusive, adverse, and unchallenged possession of the disputed land for more than 40 years.

¶ 7    On September 5, 2019, the plaintiff filed a second amended complaint with leave of court. On March 12, 2020, the trial court held a bench trial on the plaintiff's second amended complaint for declaration for title by adverse possession.

¶ 8    Shirley Little, the plaintiff's wife, testified that the plaintiff was suffering from Alzheimer's and had been in a care facility for four years. It was her opinion that his condition would never be improved, altered, or modified, and she was therefore his power of attorney for property and health care. She testified that in 1959, after the plaintiff returned from military service, he helped his father farm the family-owned land, which included the land described in the complaint. In 1963, the plaintiff's father passed, and ownership of the land transferred to his father's widow until her death in 1993. Following her death, a deed was executed transferring ownership of the portion of the widow's property east of the defendants' property to the plaintiff. The plaintiff was involved in farming the land for this entire period.

¶ 9    Shirley believed that the fence and the utility poles constituted the western boundary line between the parties' respective properties. She stated that the fence was up from at least 1955. The fence was part of the farming operation through the 1970s where it was necessary for the cattle to graze. Thereafter, the plaintiff and their sons farmed the land up to as close as possible to the poles. In the 1970s, the plaintiff purchased another farm, and the cattle were moved to that farmland. In 2009, their two sons stopped working on the farm as they had other employment. At this time, she and the plaintiff entered into a farm

3

tenancy arrangement with the Cripes.  She stated that the fence was six to eight inches east of the utility poles and did not touch them at any point, nor were the poles ever moved.  Prior to the defendants' ownership of the western parcel, at no time did a previous owner claim right to property east of the poles.  On the west side of the poles there was a grass way that was used as a driveway by all previous owners since at least 1955.  She became aware of the defendants' claim in the spring of 2015 when the defendants planted crops east of the poles.  Prior to this, she had never been notified that the poles were not the western boundary of the property.

¶ 10    Ricky Cox, a professional land surveyor, testified that he prepared a survey of the property line between the plaintiff's and the defendants' parcels.  Initially, he determined the property line as described in the deed.  The distance between that property line and the various power poles was 5½ feet.  He noted that there were remnants of a fence but that was located on property not in dispute in this case, and he found no evidence of a fence on the disputed property.

¶ 11    The plaintiff's son, Jeff Little, testified that he resided in his parents' residence, which was approximately 200 yards from the disputed property, from 1960 through 1979.  He helped farm his father's land from 1968 or 1969 through 1979.  His brother, Jay, helped his father farm until 2009.  Jeff testified that the fence was on the east side of the utility poles, but it was removed in 2011.  He described the fence as "adjacent" to the utility poles and "probably touching [them] in places," though he agreed that the distance "varied."  He stated that, from 1960 to 2009, his family continuously farmed the land up to the fence.

4

¶ 12 Jeff's brother removed the fence in 2008 because it had deteriorated and was no longer necessary for the running of the farm. In 2010, the Cripe cousins, Jacob and Shawn, started farming the plaintiff's land as cash/rent tenants. They farmed the land in the same manner as the plaintiff until 2015, when the defendants purchased the adjacent property and plowed the disputed property on the east side of the poles. On cross-examination, he admitted that the plaintiff did not farm the land between the fence and the power poles. It was his assessment and understanding that the plaintiff's property boundary was demarcated by the fence, not the poles.

¶ 13 Michael Wehrle testified on behalf of both defendants. He stated that after he had the eastern boundary of his property surveyed, he contacted Southwestern Electric Cooperative (Southwestern) to obtain a copy of the description of the easement they held. He received a written reply wherein Southwestern acknowledged that the utility poles were located on his property as the plaintiff's boundary line was the then-existing fence line.

¶ 14 The plaintiff's counsel argued that the trial court should use the power lines as the appropriate boundary marker as there was no evidence that the defendants, or any prior owners of that parcel, ever exercised dominion or control over land located east of the power poles. The evidence established that the plaintiff's property line was a previously existing fence that was adjacent to the poles but was since removed. Therefore, counsel asserted that all land up to the power poles belonged to the plaintiff.

¶ 15 Following closing arguments, the trial court granted the parties 28 days to submit supplemental authorities or written arguments. On January 21, 2021, the trial court entered a written judgment finding that the plaintiff had proved title by adverse possession. In so

finding, the court noted that the fence separating the parties' parcels about which the witnesses testified no longer existed; however, the power poles had continued to exist. The court then found that the testimony presented at trial proved with reasonable certainty that the definite location of the disputed boundary was immediately east of the power poles. The court further found that the plaintiff had proved by clear and convincing evidence that he and his predecessors in title had farmed the disputed land up to the boundary established by the power poles. The court found that this use was adverse, open, exclusive, and under a claim and belief of title against the defendants for more than 20 years. The court therefore entered judgment in favor of the plaintiff and against the defendants. The defendants appeal.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, the defendants claim the trial court erred in entering judgment in favor of the plaintiff where the necessary element of possession was not proven by clear and convincing evidence.

¶ 18    In order for a party to prevail on a claim of adverse possession, the evidence must establish that for a 20-year period, plaintiff's possession of the disputed land was "(1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious[,] and exclusive, and (5) under claim of title inconsistent with that of the true owner." *Tapley v. Peterson*, 141 Ill. App. 3d 401, 404 (1986). Additionally, whether custody of another party's land occurred due to mistake or ignorance of the correct boundary lines is immaterial in determining whether possession was adverse. *Id.* When there is no deed or color of title as to boundary lines, plaintiff bears an additional burden to establish the location of the

6

boundaries he claims. *Schwartz v. Piper*, 4 Ill. 2d 488, 493 (1954). A boundary at issue "must be definitely established at the inception, during the continuance[,] and at the completion of the period of adverse possession." *Tapley*, 141 Ill. App. 3d at 404. The visible and ascertainable boundary line must be proven by clear and convincing evidence. *Stankewitz v. Boho*, 287 Ill. App. 3d 515, 518 (1997). Plaintiff "must prove with reasonable certainty the location of the boundaries of the tract to which he seeks to apply the five elements of adverse possession, and all of the elements must extend to the tract so claimed throughout the statutory period." *Tapley*, 141 Ill. App. 3d at 404-05. Adverse possession is a strictly construed doctrine, and the elements, therefore, cannot be established by implication or inference. *Id.* at 405. "All presumptions are in favor of the owner of title, and to overcome such presumptions the adverse possessor has the burden of proving each of the five elements by strict, clear[,] and unequivocal evidence." *Id.* A reviewing court may only reverse such a finding by the trial court where its findings are contrary to the manifest weight of the evidence. *Id.* A court's decision is contrary to the manifest weight of the evidence where the opposite conclusion is apparent or where its findings appear to be unreasonable, arbitrary, or not based on the evidence. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 28.

¶ 19    Here, the testimony presented at trial clearly established that the plaintiff could not identify a clear boundary of the tract for which he sought title because no evidence was presented as to the accurate and identifiable location of the fence that previously bordered the property. It was improper for the trial court to use the power poles as the delineating boundary as the plaintiff's own witness admitted that the poles did not demarcate the

7

property boundary and instead were adjacent to where the fence was located. No other evidence was presented as to the accurate location of the alleged boundary of the tract sought in the plaintiff's complaint. Therefore, the court's judgment in favor of the plaintiff was against the manifest weight of the evidence.

¶ 20                                    III. CONCLUSION

¶ 21    For the foregoing reasons, we reverse the order of the circuit court of Fayette County where its judgment was against the manifest weight of the evidence.


¶ 22    Reversed.