2018 IL App (4th) 170227

NO. 4-17-0227

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED

December 3, 2018
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* BONNIE S., a Person Found Subject to Involuntary Admission and Administration of Psychotropic Medication | ) ) ) ) | Appeal from the Circuit Court of McLean County No. 17MH79 |
| (The People of the State of Illinois                Petitioner-Appellee,                v. Bonnie S.,                Respondent-Appellant). | ) ) ) ) ) ) ) | Honorable Rebecca S. Foley, Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        In March 2017, following a bifurcated hearing, the trial court entered two separate orders, finding that respondent, Bonnie S., (1) was in need of emergency involuntary admission to the Department of Human Services (405 ILCS 5/3-600 *et seq.* (West 2016)) and (2) was subject to involuntary administration of psychotropic medication (*id.* § 2-107.1).

¶ 2        Respondent appeals, arguing (1) certain procedural defects require reversal of the trial court's involuntary admission order, including (a) the failure to promptly file a second certificate as required by sections 3-610 and 3-611 of the Mental Health and Developmental Disabilities Code (Code) (*id.* §§ 3-610, 3-611) and (b) the failure to disclose a timeframe of the proposed treatment plan as required by section 3-810 (*id.* § 3-810); (2) the State failed to prove by clear and convincing evidence that Bonnie received all of the required written information

regarding alternate treatments; and (3) the order for involuntary treatment was unsupported by evidence regarding who would administer the treatment. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Because respondent challenges only a few specific requirements that she claims the State failed to meet, we provide only that information necessary to give a general understanding of the proceedings below. We will discuss the relevant details as needed in the analysis portion of this opinion.

¶ 5                     A. The Petition for Involuntary Admission

¶ 6        On February 28, 2017, Christopher Hays, the crisis admission counselor for Advocate BroMenn Medical Center (Advocate BroMenn) in Bloomington, Illinois, filed a petition for emergency inpatient admission by certificate. The petition alleged respondent was a person with a mental illness who may cause harm to herself or others, was unable to care for herself without treatment, and was therefore in need of immediate hospitalization. The certificate attached to the petition indicated respondent was examined in the emergency room on February 27, 2017. Respondent reported that she was hearing voices telling her to harm herself and she did not feel safe with outpatient treatment.

¶ 7              B. The Petition for Administration of Psychotropic Medication

¶ 8        A hearing was initially set for March 6, 2017. However, because witnesses were unavailable for that date, the hearing was rescheduled for March 9, 2017.

¶ 9        On March 6, 2017, Asifa Choudhry, a psychiatrist at Advocate BroMenn, filed a petition for administration of psychotropic medication, alleging respondent had a chronic, persistent mental illness that required medication but respondent refused to take any of the medication. The petition requested authority to administer four different medications. The State

sent notice indicating a hearing on the petition was scheduled for March 9, 2017.

¶ 10                                C. The Determination Hearing

¶ 11            On March 9, 2017, the parties agreed to reschedule the hearing for March 13, 2017. On March 13, 2017, the trial court first conducted a hearing on the petition for involuntary admission. The court waived respondent's attendance because she had refused to participate and her attorney and doctor agreed that forcing her attendance would create substantial suffering.

¶ 12            On that same day (March 13, 2017), a second certificate was filed that indicated that psychiatrist Nathan Ontrop examined respondent on February 28, 2017. However, he signed the certificate on March 3, 2017. The certificate concluded that respondent required immediate involuntary admission due to her mental illness, risk of self-harm, and inability to care for herself. Respondent objected to the second certificate because it was signed days after the examination. However, the trial court found it was sufficient.

¶ 13            Troy S., respondent's adult son, testified that his mother had suffered from a mental illness for many years and had been hospitalized for her illness on multiple occasions. Troy explained that when respondent stops taking her medication, she becomes withdrawn, paranoid, and distrustful of everyone—including him. Respondent also stops eating and fears for her safety. As a result, respondent had, in the past, called 911 and requested to be taken to a hospital.

¶ 14            Choudhry testified that she had been treating respondent since respondent was admitted to the hospital. Choudhry diagnosed respondent with psychosis not otherwise specified with a rule out of bipolar disorder and schizoaffective disorder. Respondent's condition was deteriorating; she was unable to care for herself and was a danger to herself. Choudhry indicated respondent would no longer leave her room, only ate with a lot of encouragement, and even then

would not finish her meals. Respondent refused to take her medication, was convinced Choudhry was a representative from a drug company, and told nurses that the other patients were waiting outside her door "to get her." Most of all, respondent reported hearing voices, which made her feel unsafe.

¶ 15　　Choudhry acknowledged that respondent had taken the minimum dose of Seroquel, an antipsychotic medication, for the previous five days but insisted it was not enough to improve her condition. Respondent had refused to take a larger dose or any other medication. Respondent would not say why she refused to take more than the minimum dose, and she refused to speak with Choudhry or medical staff about it. When they entered her room and tried to talk to her, she would wrap herself in her sheets and tell them to leave.

¶ 16　　The State showed Choudhry a social services report that outlined respondent's treatment plan, and the trial court admitted it into evidence over respondent's objection. Choudhry explained that respondent needed medication and a "long-term treatment for her psychiatric problems."

¶ 17　　Hays testified that he met with respondent on the day she was admitted to the hospital. Respondent told Hays that she was hearing voices that were telling her to harm herself and she did not feel safe at home. Hays stated he was familiar with respondent because she had come in before under similar circumstances on more than one occasion.

¶ 18　　The trial court found the State proved by clear and convincing evidence that respondent had a mental illness, was reasonably expected to engage in conduct placing herself in harm, could not care for herself, and refused to accept assistance from her family. The court also concluded that respondent was refusing treatment because she was not taking the necessary medication and her mental illness prevented her from understanding the need for treatment. As a

result, respondent's history and pattern of mental illness demonstrated that her condition was deteriorating such that inpatient treatment was necessary. The court ordered respondent to be taken into the custody of the Department of Human Services.

¶ 19                    D. The Administration of Medication Hearing

¶ 20            At the conclusion of the determination hearing, the trial court conducted a hearing on the State's petition for administration of psychotropic medication. Choudhry testified she had explained to respondent the side effects, risks, and benefits of the proposed medication, Risperdal, as well as the three alternative medications, Seroquel, Haldol, and Cogentin, listed in the petition. Choudhry stated that she provided written copies of the same information to respondent. The trial court admitted the written copies into evidence. Choudhry further testified that (1) there were no alternative treatment options other than medication and (2) the benefits of the treatment outweighed the harm. Choudhry explained that respondent lacked the capacity to make a reasoned decision about the medication because she refused to discuss treatment, stated she was "fine" and did not need medication, and believed Choudhry was an agent of a drug company trying to sell her the medication.

¶ 21            The trial court found that respondent lacked the capacity to make a reasoned decision about her treatment and the benefits of the treatment outweighed the harm. The court took judicial notice of some of the testimony from the determination hearing, including Troy's description of respondent's history of mental illness, and concluded that respondent was suffering and her condition was deteriorating. The court ordered that the medication could be administered by respondent's treating physician, Dr. Girishkumar Dhorajia, and the staff at McFarland Mental Health Center (McFarland). The order referred to an attached list of authorized staff members at McFarland.

¶ 22        This appeal followed.

¶ 23                                   II. ANALYSIS

¶ 24        Respondent appeals, arguing (1) certain procedural defects require reversal of the trial court's involuntary admission order, including (a) the failure to promptly file a second certificate as required by sections 3-610 and 3-611 of the Code (405 ILCS 5/3-610, 3-611 (West 2016)) and (b) the failure to disclose a timeframe of the proposed treatment plan as required by section 3-810 (*id.* § 3-810); (2) the State failed to prove by clear and convincing evidence that Bonnie received all of the required written information regarding alternate treatments; and (3) the order for involuntary treatment was unsupported by evidence regarding who would administer the treatment. We disagree and affirm.

¶ 25        We note that the parties agree this case falls under the "capable of repetition" exception to the mootness doctrine. See *In re Amanda H.*, 2017 IL App (3d) 150164, ¶ 28, 79 N.E.3d 215. We agree and address the merits of respondent's claims.

¶ 26         A. Procedural Defects in the Involuntary Admission Proceedings

¶ 27        Respondent first argues the involuntary admission order should be reversed because the State failed to "promptly" file a second certificate and never disclosed a timetable for the proposed treatment plan. Respondent acknowledges that she failed to raise these objections in the trial court but maintains they are still reviewable under plain-error review. We address these arguments in turn.

¶ 28                1. *Whether the Second Certificate Was Filed Promptly*

¶ 29                   a. The Relevant Statutory Provisions

¶ 30        Section 3-610 of the Code provides, in pertinent part, as follows:

"As soon as possible but not later than 24 hours *** after admission of a

- 6 -

respondent pursuant to this Article, the respondent shall be examined by a psychiatrist. The psychiatrist may be a member of the staff of the facility but shall not be the person who executed the first certificate. *** If, as a result of this second examination, a certificate is executed, the certificate shall be promptly filed with the court. *** If the respondent is not examined or if the psychiatrist *** does not execute a certificate pursuant to Section 3-602, the respondent shall be released forthwith." 405 ILCS 5/3-610 (West 2016).

¶ 31 Section 3-611 of the Code provides, as follows:

"Within 24 hours *** after the respondent's admission under this Article, the facility director of the facility shall file 2 copies of the petition, the first certificate, and proof of service of the petition and statement of rights upon the respondent with the court in the county in which the facility is located. Upon completion of the second certificate, the facility director shall promptly file it with the court and provide a copy to the respondent. The facility director shall make copies of the certificates available to the attorneys for the parties upon request. Upon the filing of the petition and first certificate, the court shall set a hearing to be held within 5 days *** after receipt of the petition." *Id.* § 3-611.

¶ 32 b. The Applicable Law and Standard of Review

¶ 33 "Because the Code protects liberty interests, strict compliance with statutory procedures is required." *Amanda H.*, 2017 IL App (3d) 150164, ¶ 34. However, failure to strictly comply with a provision of the Code does not require reversal when (1) a respondent fails to object to alleged errors in the trial court and (2) respondent was not prejudiced. *In re James H.*, 405 Ill. App. 3d 897, 905, 943 N.E.2d 743, 750 (2010). Whether a respondent's statutory rights

have been violated is reviewed *de novo*. *Amanda H.*, 2017 IL App (3d) 150164, ¶ 34.

¶ 34                                    c. This Case

¶ 35        Respondent admits she did not object at trial to the alleged failure to promptly file the second certificate. However, respondent contends she was prejudiced by the delay because her counsel was not able to research the issue because he did not have access to a law library. We disagree.

¶ 36        First, we are unaware of any case that would have supported respondent's argument in the trial court. Respondent claimed the second certificate was deficient because it had been executed three days after the examination. On appeal, she has not provided any authority that suggests a psychiatrist must sign the certificate on the same day as the examination.

¶ 37        Additionally, it is unclear how Ontrop's testimony would have been helpful to respondent. The second certificate indicates that discharge from the hospital was attempted but respondent refused because of her concerns that she would hurt herself. The other information in the second certificate is entirely consistent with Hays's testimony. All testimony indicated respondent's condition got *worse* over time, and respondent refused to participate in the hearing. Given the specific facts of this case, particularly the severity of respondent's mental illness, we conclude she was not prejudiced by any delay in receiving the second certificate.

¶ 38        Second, we conclude the second certificate was filed promptly. Although the statute employs seemingly mandatory language, the Illinois Supreme Court has found the Code's requirements are directory, not mandatory, unless (1) "there is negative language prohibiting further action in the case of noncompliance" or (2) "the right the provision is designed to protect would generally be injured under a directory reading." *In re James W.*, 2014 IL 114483, ¶ 35, 10

N.E.3d 1224. The purpose of the statutory deadlines is "to insure that determinations regarding whether a person meets the requirements for involuntary admission are made expeditiously so that appropriate care may be provided when necessary and so that citizens are not subject to detention when there is no reason for them to be held involuntarily." *Id.* ¶ 36.

¶ 39    Sections 3-610 and 3-611 do not establish any consequences for failing to file the second certificate promptly. 405 ILCS 5/3-610, 3-611 (West 2016); see *In re Rita P.*, 2014 IL 115798, ¶ 45, 10 N.E.3d 854 (holding section 3-816(a) of the Code is directory because it does not contain a consequence for noncompliance). Comparatively, section 3-610 does provide consequences for not conducting a second examination within 24 hours: release of the respondent. 405 ILCS 5/3-611 (West 2016); see *James W.*, 2014 IL 114483, ¶ 36 (holding section 3-800(b) of the Code, which limits continuances to 15 days, is directory because "it imposes no consequences, such as dismissal of the State's petition," if the requirement is not met). Further, the fact that the legislature used the term "promptly" instead of giving a specific time limit, as it did for other requirements throughout the Code, indicates an intention to have a flexible standard.

¶ 40    Respondent suggests the term "promptly" must mean at least within five days because section 3-611 requires a hearing within five days of the petition being filed and the parties agree a second certificate must be filed before a hearing. However, the Code also provides for extensions and continuances subject to specific rules. See 405 ILCS 5/3-800(b) (West 2016) (providing for continuances of no more than 15 days unless requested by a respondent).

¶ 41    Instead, the second certificate requirement ensures that a person is not held based on the opinion of a single examiner. Section 3-610 requires a psychiatrist to examine the

respondent if one had not previously, thus ensuring a trained professional is able to provide an expert opinion before further detention. Additionally, by requiring the examination for the first certificate to be conducted within 72 hours *before* admission and the examination for the second certificate to be conducted within 24 hours *after* admission, the statute ensures a respondent is not detained based on a mere passing episode. See *James W.*, 2014 IL 114483, ¶ 36 (explaining a delay may inure to the patient's benefit if her mental state improves or stabilizes).

¶ 42    In this case, the examination occurred on February 28, 2017, the certificate was signed on March 3, 2017, and the certificate was filed on the day of the hearing, March 13, 2017. We take judicial notice of the fact that March 3, 2017, was a Friday, and March 13, 2017, was a Monday. Because the statute excludes weekends from most time frames, the filing delay was closer to one week than two weeks.

¶ 43    We are sympathetic to respondent's position and in no way condone or express approval of such a long delay between the examination and filing. The best practice is clearly completing the certificate and filing it within 24 hours of admission. See *In re Andrew B.*, 237 Ill. 2d 340, 349, 930 N.E.2d 934, 939 (2010) (stating in dicta "[u]ltimately, section 3-611 requires the mental-health facility director to file in the trial court the petition and two supporting certificates within 24 hours after the individual is admitted to the facility"). However, the delay here was not unreasonable and did not prejudice respondent.

¶ 44    2. *Whether a Timetable Was Provided*

¶ 45    Respondent next argues that the trial court's order must be reversed because the State failed to offer any evidence regarding how long she would be subject to treatment. Respondent contends that the written treatment plan submitted by the State did not contain a timetable for the completion of any treatment goals and Choudhry failed to provide any

testimony on the issue. The State responds that the issue has been waived and the statute's intent was complied with because Choudhry's testimony indicated that respondent needed long-term treatment, such as the maximum time allowed by the Code.

¶ 46                                    a. The Relevant Statute

¶ 47         Section 3-810 of the Code provides, as follows:

"Before disposition is determined, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission on an inpatient or outpatient basis, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3-810 (West 2016).

¶ 48                                    b. The Applicable Law

¶ 49         "Where a respondent fails to object to the absence of a predispositional report, strict compliance with section 3-810 is required only when the legislative intent cannot otherwise be achieved." *In re Robinson*, 151 Ill. 2d 126, 134, 601 N.E.2d 712, 717 (1992). Oral testimony that provides the requisite information required by statute can be a sufficient substitute. *Id.*; *Amanda H.*, 2017 IL App (3d) 150164, ¶ 41. Cursory or conclusory testimony is not sufficient to satisfy the statutory requirements. *Amanda H.*, 2017 IL App (3d) 150164, ¶¶ 42, 45. The purpose of section 3-810 is "to provide trial judges certain information necessary for determining whether

- 11 -

an individual is subject to involuntary admission" and "to protect against unreasonable commitments and patient neglect, and to ensure adequate treatment for mental health care recipients." *Robinson*, 151 Ill. 2d at 133.

¶ 50                                              c. This Case

¶ 51          The State concedes that the predisposition report did not include a timetable for the treatment plan as required by statute. However, the State argues Choudhry provided sufficient testimony to meet the statutory goals. During her testimony, Choudhry stated, "[Respondent] needs a higher level of care and a long-term treatment for her psychiatric problems." According to the State, this statement indicates Choudhry believed respondent needed 90 days commitment, the maximum allowed under the statute. We agree with the State.

¶ 52          Choudhry testified extensively concerning the long-term nature of respondent's illness and how outpatient treatment had failed. Choudhry also indicated that respondent had been repeatedly hospitalized within the last few months to little effect because she was unable to comply with treatment. Given this context, when Choudhry stated that respondent needed "a long-term treatment," Choudhry was clearly indicating prolonged inpatient treatment was necessary to accomplish respondent's treatment goals. We conclude the State presented sufficient testimony to allow the trial court to make an informed decision, thus substantially complying with the purpose of section 3-810.

¶ 53                  B. Written Information of Alternative Treatments

¶ 54          Respondent next argues the State failed to provide written notice of alternative treatments to her as required by section 2-102(a-5) of the Code. 405 ILCS 5/2-102(a-5) (West 2016). Specifically, respondent contends that the State only presented evidence that respondent received written information concerning *medications* and not about *alternatives to medication*.

The State responds that because Choudhry testified that there were no alternative treatments available and nonmedicinal options were not viable, respondent could not have been given written information about them. Respondent counters that Choudhry acknowledged other forms of treatment were available and Choudhry was required to provide written information about nonmedicinal treatment regardless of whether or not the treatment was considered viable. We agree with the State.

¶ 55                                     1. *The Applicable Law*

¶ 56        The State may secure an order providing for the administration of psychotropic medications to a respondent only if it proves the respondent lacks the capacity to make a reasoned decision to accept or refuse psychotropic medication. *Id.* § 2-107.1(a-5)(4)(E). Whether a respondent lacks such a capacity can be determined only if the respondent has been provided with the information necessary to make a reasoned decision. *In re Beverly B.*, 2017 IL App (2d) 160327, ¶ 26, 86 N.E.3d 1279. Thus, "the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." 405 ILCS 5/2-102(a-5) (West 2016). We review *de novo* whether the State has complied with this requirement. *In re Laura H.*, 404 Ill. App. 3d 286, 290, 936 N.E.2d 801, 805 (2010).

¶ 57        Initially, we note that the First, Second, and Fifth Districts have considered the question and have agreed with respondent. In *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1072-73, 944 N.E.2d 384, 394-95 (2011), the Second District held that an order authorizing the administration of psychotropic medication had to be reversed because the State conceded it did not present any evidence that the respondent was given written notice of alternative treatments

other than the proposed medications. The Fifth District reached the same conclusion in *In re Debra B.*, 2016 IL App (5th) 130573, ¶ 28, 55 N.E.3d 212. In *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 16, 977 N.E.2d 1183, the First District concluded that the State failed to comply with section 2-102(a-5) of the Code because the written notifications only provided information "as to alternative medications but not as to any nonmedical treatment options." The First District relied on *Nicholas L.* to conclude the lack of notice required reversal. *Id.* ¶¶ 17-18.

¶ 58        The State claims the Third District's decision in *In re Vanessa K.*, 2011 IL App (3d) 100545, 954 N.E.2d 885, warrants a different result. In that case, the treating physician filed a petition seeking to administer a particular medication but attached a list of 20 proposed alternatives. *Id.* ¶ 3. At the hearing, the physician stated he wanted to administer a different medication because he had learned from the respondent's medical records that she had responded well to it in the past. *Id.* ¶ 23. The trial court allowed the physician to amend the petition but only after the physician provided the respondent with written notice, which he did during the hearing. *Id.*

¶ 59        On appeal, the respondent claimed reversal was necessary because the physician did not provide her with written notice of the risks and benefits of all the medications in the order, noting the long list of proposed alternatives. *Id.* ¶ 21. The Third District rejected this argument, explaining that the order provided only for the administration of one medication, notwithstanding the fact that the list of alternatives was attached, because the physician "did not consider [the alternate medications] to be viable options for [respondent]." *Id.* ¶ 23. "Accordingly, there was no need to provide information on all the medications listed as alternatives in the attachment to the trial court's order." *Id.*

¶ 60        The Fifth District rejected the argument the State makes here and distinguished

*Vanessa K.* because of the limited nature of the argument raised by the respondent in that case. *Debra B.*, 2016 IL App (5th) 130573, ¶ 34.

¶ 61        We find our own precedent to be most helpful on this issue. In *Laura H.*, 404 Ill. App. 3d at 292, this court concluded that the State failed to comply with section 2-102(a-5) because the written information provided to the respondent did not explain which medication was the first choice and which were alternatives. Further, the written information did not explain which medications were alternatives for the same purpose as the drug listed in the petition, and some of the information indicated the medication was for purposes wholly unrelated to mental health, such as "agitation and trouble sleeping." *Id.* We then noted that "if nonmedication treatment alternatives *were appropriate for respondent*, the written information should also have included them since 'treatment' includes more than medication." (Emphasis added.) *Id.* (quoting 405 ILCS 5/1-128 (West 2008)).

¶ 62        We conclude that written notification of nonmedicinal treatments is required only when they are reasonable, viable alternatives. *Id.* The Second District's recent analysis in *In re Beverly B.*, 2017 IL App (2d) 160327, supports our conclusion. In that case, the Second District explained how the statutory scheme established by sections 2-102(a-5) and 2-107.1 are designed to require the State to attempt to get something approximating informed consent. *Id.* ¶¶ 31-32. The court described the statutory language in section 2-102(a-5) as

> "functionally all but identical" to the maxim that "an individual has the capacity to consent to *** the administration of psychotropic medication when, 'based upon conveyed information concerning the risks and benefits of the proposed treatment and *reasonable alternatives* to treatment, he [or she] makes a rational choice to either accept or refuse the treatment.' " (Emphasis added.) *Id.* ¶ 32

- 15 -

(quoting *In re Israel*, 278 Ill. App. 3d 24, 36, 664 N.E.2d 1032, 1039 (1996)).

The Second District summarized as follows:

"Recognizing this, we have a standard by which we can decide whether the information respondent received was adequate. To make a reasoned decision, an individual should have a general idea of the advantages and disadvantages of his or her *realistic* choices. General information about mental-health treatments that might or might not be of use to a recipient does not help a recipient understand his or her choices. Indeed, *information about treatments of no value to the recipient will be only a source of confusion and so reduce the chance of a reasoned decision*. Moreover, the relevance of the information needs to be apparent. That is, merely advising a recipient that a treatment exists without advising him or her of how it is relevant is not likely to help." (Emphases added.) *Id.* ¶ 33.

¶ 63                                2. *This Case*

¶ 64        In this case, Choudhry stated there were no alternative treatments other than medication. Indeed, the testimony presented at the bifurcated hearing supports this conclusion. Troy explained that his mother had a pattern of withdrawal and the worse her condition got, the more she distrusted other people and isolated herself. Choudhry confirmed this pattern of isolation and paranoia was occurring and getting worse as evidenced by respondent's telling the staff her belief that other patients were out to get her and by her refusing to leave her room or speak with anyone about treatment. Given respondent's extreme paranoia, isolation, and absolute refusal to speak with others about her illness, the record demonstrates any type of counseling or therapy was not reasonable without medication. Accordingly, we conclude the State

- 16 -

demonstrated it provided proper written notice of all reasonable alternative treatments to respondent.

¶ 65    C. The Failure To List the People Authorized To Administer the Medication

¶ 66    Finally, respondent argues the order for administration of psychotropic medication was deficient because the State did not present any evidence at the hearing regarding who would be allowed to administer the medication. Respondent claims this information is necessary to inform the trial court and respondent who will be administering the medication and to ensure the order is supported by proper evidence.

¶ 67    Respondent does not provide any authority to support her position. Section 2-107.1 outlines what is required in a petition for the administration of psychotropic medication, what must be proved at the hearing, and what the trial court must include in any order granting such a petition. 405 ILCS 5/2-107.1 (West 2016). Subsection (a-5)(6) provides that "[a]n order issued under this subsection (a-5) shall designate the persons authorized to administer the treatment." *Id.* § 2-107.1(a-5)(6). The statute does not indicate that specific evidence must be presented regarding who is authorized to administer treatment, and we decline to read such a requirement into it. Nonetheless, we suggest sound practice would be (1) to present evidence of the physician who will ultimately be responsible for overseeing a respondent's care and (2) for the order to name this person specifically. Doing so would ensure a respondent, his or her family, and the court would know who to contact to discuss treatment, if necessary.

¶ 68    III. CONCLUSION

¶ 69    For the reasons stated, we affirm the trial court's judgment.

¶ 70    Affirmed.

- 17 -